1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11 | CHOICE HOTELS INTERNATIONAL, INC., a Delaware Corporation,,

Case No. 11cv1277 BTM(WMc)

12

Plaintiff,

**ORDER DENYING MOTION TO SET ASIDE ENTRY OF DEFAULT AND GRANTING DEFAULT JUDGMENT**

13       v.

14 | KUSUM VALI, INC., a California corporation, et al.,

15

16                           Defendants.

17        On September 19, 2011, Plaintiff Choice Hotels International, Inc., filed a motion for

18 default judgment.  On December 1, 2011, Defendants Kusum Vali, Inc. ("Kusum"), Sunil

19 Patel ("S. Patel"), and Tejas Patel ("T. Patel") filed a motion to set aside entry of default.  In

20 an order filed on May 3, 2012, the Court conditionally granted the motion to set aside entry

21 of default.  The Court granted the motion to set aside entry of default on the condition that

22 the moving defendants pay Plaintiff $7,500 as reasonable attorney's fees for bringing the

23 motion for default judgment.  The Court ordered the defendants to pay the $7,500 to Plaintiff

24 and file a certification of payment with the Court within 30 days of the filing of the Order.  The

25 defendants have not filed anything indicating that they have complied with the Court's order.

26 Therefore, their motion to set aside entry of default is **DENIED**, and the Court proceeds to

27 Plaintiff's motion for default judgment.  For the reasons set forth below, Plaintiff's motion for

28 default judgment is **GRANTED**.

# I. **FACTUAL BACKGROUND**

On June 10, 2011, Plaintiff Choice Hotels International, Inc. ("Plaintiff") commenced this action.  Plaintiff is the owner of a number of trademarks for the mark "ECONO LODGE" for use in connection with the provision of hotel and motel services.  (Compl. ¶¶ 21-30.)

On or about March 31, 2007, Plaintiff entered into a Franchise Agreement with Kusum, S. Patel, T. Patel, and Navnit Khatri ("Khatri") (collectively "Defendants"), which permitted them to operate an ECONO LODGE® hotel franchise at 330 North Imperial Avenue, El Centro, CA 92243 (the "Hotel").  (Compl. ¶ 31.)  The Franchise Agreement licensed the ECONO LODGE family of marks to Defendants for so long as the Franchise Agreement remained in effect.  (Compl. ¶ 32.)

On or about March 11, 2010, Plaintiff issued a Notice of Termination of the Franchise Agreement to Defendants based on their failure to pay certain required fees under the terms of the Agreement. (Compl. ¶ 40.) The Notice of Termination instructed Defendants to cease use of any and all of the ECONO LODGE family of marks. (Compl. ¶¶ 41-42.)  The Notice also advised Defendants that under the terms of the Agreement, they were obligated to pay Plaintiff $7,912.89 in franchise and related fees, $797.47 in travel agent commission fees, and $37,375.00 in lost profits.  (Compl. ¶ 43.)

Plaintiff alleges that Defendants continued to use the ECONO LODGE family of marks in, around, and in publicity for, the Hotel from March 2010 to June 2011.  (Compl. ¶ 46; Baehr Decl. ¶ 5.)  Plaintiff asserts claims for infringement of federally registered trademark (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a), trademark infringement under California law, and violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200).  Plaintiff seeks injunctive relief as well as economic damages.  Plaintiff also requests treble damages and attorney's fees and costs.

On July 18, 2011, default was entered against Kusum.  On July 20, 2011, default was entered against S. Patel and T. Patel.  On August 12, 2011, default was entered against Khatri.

## II.  STANDARD

Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b) and is left to the trial court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  After default has been entered, the well-pleaded factual allegations of the complaint, except those relating to the amount of damages, shall be taken as true.  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).  In determining damages, the court can rely on evidence submitted by the plaintiff or may conduct a full evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).  A judgment by default shall not award damages that are different from or exceed the amount requested in the plaintiff's complaint.  Fed. R. Civ. P. 54(c).

Factors which may be considered by courts in exercising their discretion as to whether to enter default judgment include: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

## III.  DISCUSSION

Plaintiff seeks default judgment against Defendants.  As discussed below, the Court finds that Plaintiff is entitled to default judgment against Defendants in the amount of $27,722.90.

A.  Eitel Factors

The Eitel factors weigh in favor of granting default judgment.  Defendants were given the opportunity to participate in this litigation when the Court conditionally granted their motion to vacate default.  Defendants did not comply with the conditions and have therefore chosen to not defend this action.  Because Defendants are not participating in this action, Plaintiff will be left without a remedy if default judgment is not entered in its favor.  Plaintiff's

1  claims against Defendants are meritorious, and the sum of money at stake in the action is

2  significant.

3

4  B.  Merits of Claims

5       Plaintiff has asserted a claim of federal trademark infringement (15 U.S.C. § 1114)

6  against Defendants.  To establish its claim, Plaintiff must establish that Defendants are using

7  (1) any reproduction, counterfeit, copy of colorable imitation of a mark; (2) without Plaintiff's

8  consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or

9  advertising of any goods or services; (5) where such use is likely to cause confusion or to

10 cause a mistake or to deceive.  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175,

11 1178 (9th Cir. 1988).  Plaintiff has established that Defendants continued to use the ECONO

12 LODGE family of marks, without Plaintiff's consent, in, around, and in publicity for, the Hotel

13 from March 2010 to June 2011.  (Compl. ¶ 46; Baehr Decl. ¶ 5.)  Defendants' unauthorized

14 use of the marks created confusion regarding the origin of the hotel services.

15      Based on the same facts, Plaintiff has also established its claims of false designation

16 of origin (15 U.S.C. § 1125(a)), state law trademark infringement (Cal Bus. & Prof. Code §

17 14245), and violation of Cal. Bus. & Prof. Code § 17200.  See Wecosign, Inc. v. IFG

18 Holdings, Inc., __ F. Supp. 2d __, 2012 WL 638454, at * 3 (C.D. Cal. Jan. 23, 2012)

19 (explaining that claims of false designation of origin and unfair competition under § 17200

20 are substantially congruent with a federal trademark infringement claim).

21

22 C.  Remedies

23      1.  Injunctive Relief

24      Plaintiff seeks a permanent injunction prohibiting Defendants from any unauthorized

25 use of the ECONO LODGE family of marks.  Under the Lanham Act, the district court has

26 the "power to grant injunctions according to principles of equity and upon such terms as the

27 court may deem reasonable, to prevent the violation of any right" of the trademark owner.

28 15 U.S.C. § 1116(a).  The Ninth Circuit has held that "[i]njunctive relief is the remedy of

1    choice for trademark and unfair competition cases, since there is no adequate remedy at law

2    for the injury caused by a defendant's continuing infringement."

3         In order for the court to grant a permanent injunction, Plaintiff must demonstrate: (1)

4    actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not

5    granted; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance

6    the public interest.  Winter v. Natural Res. Def. Counsel, 555 U.S. 7, 20 (2008).

7         Plaintiff has satisfied the requirements for obtaining a permanent injunction.  As

8    discussed above, Plaintiff has demonstrated a likelihood of success on its claims.  Plaintiff

9    has also shown a likelihood of irreparable injury if a permanent injunction is not granted.  In

10   a trademark infringement action, "once the plaintiff establishes a likelihood of confusion, it

11   is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not

12   granted." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 (9th Cir. 1989).  Although

13   it appears that Defendants no longer own or operate the hotel at 330 North Imperial Avenue,

14   El Centro, CA 92243, as far as the Court can tell, some of the Defendants are still engaged

15   in the hotel business.   Therefore, there is a risk that Defendants will continue to use

16   Plaintiff's marks.   The balance of hardships favor Plaintiff because an injunction will only

17   proscribe Defendants' infringing activities.  Finally, an injunction is in the public interest

18   because "[t]he public has an interest in avoiding confusion between two companies'

19   products." Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 993

20   n. 5 (9th Cir. 2009).

21

22        2.  Damages

23        Plaintiff also seeks actual damages.  The Lanham Act provides that a trademark

24   owner may recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff;

25   and (3) the costs of the action.  15 U.S.C. § 1117.

26        Plaintiff claims that it is entitled to recover the Hotel's gross revenue during the period

27   of infringement.  However, in a case such as this, the appropriate measure of damages is

28   the amount of royalties Plaintiff would have otherwise received under the Franchise

Agreement.  See Ramada Franchise Systems, Inc. v. Boychuk, 283 F.Supp.2d 777, 790 (N.D.N.Y. 2003), aff'd, 2005 WL 181688, at * 1 (2d Cir. Jan. 25, 2005) (holding that proper measure of damages for franchisee's continued use of franchisor's marks after termination of the franchise agreement was royalties the franchisor would have received during the period of infringement); see also Ramada Franchise Systems, Inc. v. Royal Vale Holspitality of Cincinnati, Inc., 2005 WL435263, at  * 16 (N.D. Ill. Feb. 16, 2005) (same).

Pursuant to the Franchise Agreement, Plaintiff was entitled to fees in the amount of 8% of the monthly gross room revenues.  (Baehr Decl. ¶ 7.)   In Plaintiff's moving papers, Plaintiff admits that it does not know for certain what Defendants' gross revenue was for the period of infringement. (Pl. Mem. of P. & A.  at 11.) However, Plaintiff estimates, based on historic data, that the Hotel likely generated $349,331.51 during the 15 months of infringing activity.  Id.  Defendants, in their Opposition to Motion for Entry of Default Judgment, attached monthly rental reports for the time period from March 2010 to March 2011 and calculated that the Hotel's gross income for the period from March 2010 to March 2011 was $146,721.08. (Decl. of S. Patel, ¶ 18.)  Although Defendants were still searching for the monthly reports for April-June 2011, Defendants estimated that the gross income for that time period was no more than $15,000 to $18,000.  (Id. at ¶ 20.)  Thus, according to Defendants, the Hotel's sales for the time period in question equaled, at maximum, approximately $164,000.

The Court does not find Plaintiff's estimate of Defendants' gross revenue to be reliable, especially given the downturn in the economy in recent years, and therefore utilizes the $164,000 figure, which does appear to be consistent with the documentation submitted by Defendants.  Eight percent of $164,000 is $13,120.  Therefore, $13,120 is the amount that Plaintiff is entitled to recover to compensate it for lost royalties.

Plaintiff also seeks $8,710.36 in outstanding franchise fees, travel agent commission fees and related fees owed by Defendants as of the date of the termination of the Franchise Agreement. (Baehr Decl. ¶ 4.) However, these unpaid fees are not the result of Defendants' infringement and are therefore not recoverable as damages in this action.  There was no

1   breach of contract claim.

2        Under § 1117, Plaintiff is entitled to the recovery of costs.  The Court awards Plaintiff

3   its costs totaling $1,103.30.  (Ex. B. to Lindell Decl.)

4        Plaintiff requests treble damages under § 1117(a), which provides that the court "may

5   enter judgment, according to the circumstances of the case, for any sum above the amount

6   found as actual damages, not exceeding three times such amount."  Section 1117(a) also

7   provides, however, that any damages enhancement "shall constitute compensation and not

8   a penalty."  Accordingly, "although a judge or jury may award up to triple the amount of lost

9   profits, actual damages and costs to compensate a mark holder, the Lanham Act has been

10   construed to expressly forbid the award of damages to punish an infringer."  Skydive

11   Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1114 (9th Cir. 2012).  In Boychuk, 283 F. Supp.

12   2d at 791, the district court declined to award treble damages because there was no

13   evidence that the amount awarded to compensate the plaintiff for lost royalties was

14   inadequate as compensation for the infringement.  Similarly, here, Plaintiff has not provided

15   non-punitive reasons for the award of treble damages.

16        In sum, the Court finds that Plaintiff is entitled to damages in the amount of

17   $14,223.30 ($13,120 for lost royalties and  $1,103.30 for costs).

18

19       3.  Attorney's Fees

20        Under the Lanham Act, attorney's fees may be granted in "exceptional" cases. 15

21   U.S.C. § 1117(a).  The Ninth Circuit has held that "exceptional" refers to cases where the

22   defendant's behavior was malicious, fraudulent, deliberate, or willful.  Playboy Enters., Inc.

23   v. Baccarat Clothing Co., 692 F.2d 1272, 1276 (9th Cir. 1982).  Here, Defendants' actions

24   can be characterized as willful because they continued to use Plaintiff's marks for 15 months

25   after the termination of the Franchise Agreement.  Accordingly, an award of attorney's fee

26   is appropriate.

27        In the Court's order conditionally setting aside the entry of default, the court found that

28   $7,500 was the appropriate amount to compensate Plaintiff for reasonable attorney's fees

incurred in connection with bringing the motion for default judgment (25 hours at $300 per hour).  In its motion for default judgment, Plaintiff requests an additional $10,595 in fees for work performed prior to the motion for default judgment (32.6 hours at $325 per hour).  Upon review of the redacted time sheets, the work performed consisted of drafting and filing of the complaint, miscellaneous strategy and analysis, correspondence with Saehan Bank (originally a defendant), drafting a couple of stipulations, and filing requests for entry of default.  The Court finds that reasonable compensation for this work is $6,000 (20 hours at the rate of $300 per hour).  Thus, the total award of attorney's fees is $13,500.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' motion to set aside entry of default is **DENIED**, and Plaintiff's motion for default judgment is **GRANTED**.   The Court grants judgment in favor of Plaintiff Choice Hotels International, Inc., and against defendants Kusum Vali, Inc., Sunil Patel, Tejas Patel, and Navnit Khatri, jointly and severally, in the amount of $27,723.30 ($14,223.30 in damages and $13,500 in attorney's fees).  As set forth in the judgment, the Court also permanently enjoins Defendants and their agents, servants, employees, and all persons in active concert or participation with any of them from infringing upon Plaintiff's ECONO LODGE trademarks.

**IT IS SO ORDERED.**

DATED:  July 9, 2012

BARRY TED MOSKOWITZ, Chief Judge
United States District Court